# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,     :

     Plaintiff,             :

vs.                         :     CA 09-0643-C

WINN-DIXIE MONTGOMERY,
LLC                     :

     Defendant.         :

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 65) and evidence and brief filed in support of same (docs. 66 & 67), all filed October 8, 2010; Plaintiff's Brief in Opposition to Summary Judgment (doc. 71), filed November 8, 2010; and Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment (doc. 72), filed November 22, 2010.[1] Upon consideration of the foregoing pleadings and all

---

[1]     Defendant's motion for summary judgment is before the Court for disposition, pursuant to 28 U.S.C. § 636(c), on the implicit consent of the parties. *Compare Roell v. Withrow*, 538 U.S. 580, 590 (2003) ( "We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge. Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored.") *with* Doc. 2, at p. 1 ("This civil action has been randomly assigned to United States Magistrate Judge William E. Cassady for all purposes including trial. In accordance with 28 U.S.C. § 636(c), the Magistrate Judges of this District Court have been designated to conduct any and all proceedings in a civil case, including a jury or non-jury trial, and to order the entry of a final judgment, upon the consent of all parties. . . . You have the right to have your case reassigned to a United States District Judge for trial and disposition. If you wish to have the case reassigned, you or your attorney need only return the Request for Reassignment to a United States District Judge . . . .") *and* Doc. 10, at ¶ 8 ("This consent action shall be pretried by Magistrate

other relevant pleadings in the file, and for the reasons that follow, the Court **GRANTS** Defendant's motion for summary judgment (doc. 66) in its entirety, and **DISMISSES** Plaintiff's complaint (doc. 1), as amended (doc. 25), **WITH PREJUDICE**.[2]

## FACTUAL BACKGROUND

This is an age discrimination case under the Age Discrimination in Employment Act of 1967, 28 U.S.C. §§ 621 *et seq.*, (the "ADEA") in which the Equal Employment Commission (the "EEOC" or the "Commission")—on behalf of Mr. Clyde "Lou" Bradberry—contends that the remaining defendant,[3] Winn-Dixie Montgomery, LLC ("WDM"), refused to promote Mr. Bradberry to a management position because of his age. (Doc. 25, ¶¶ 10-14.)

In 1977, Mr. Bradberry began working for WDM at what is now Store 543 in Selma, Alabama. Since starting as a bagger, Mr. Bradberry has served as a produce trainee, Produce Associate, Dairy/Frozen Food Manager, member of a night shift stocking crew, Security Guard, Grocery Manager, Meat Cutter Trainee, Meat Cutter, and, in 2001, transferred to his

---

Judge William E. Cassady . . . ."); *see also Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350-51 (11th Cir. 2007) ("Eight months of continual participation in pretrial proceedings justifies the inference of consent from a litigant aware of the need to consent.").

[2] Any appeal taken from this memorandum opinion and order and judgment must be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 2, at p. 1 ("An appeal from a judgment entered by a Magistrate Judge may be taken directly to the United States Court of Appeals for the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court.").)

[3] This Court dismissed with prejudice Defendant Winn-Dixie Stores, Inc. ("WDS"), effectively the parent of WDM, finding that the Court lacked personal jurisdiction over WDS on August 13, 2010. (*See* Doc. 49.)

current position: Produce Manager.  (*See generally* Doc. 66, pp. 2-6 (citing Doc. 67-1, Lou Bradberry Dep., pp. 23-134, 111-34, 235-46, 283-84).)[4]

From January to March 2007—on the heels of its emergence from bankruptcy—WDM initiated a project known as "Building A Better Winn Dixie" ("BABWD") "to identify key job responsibilities and accountabilities to provide both efficient operations in the retail stores and better customer service."  (*Id.*, p. 7; Doc. 67-4, p. 64 (Pl.'s Dep. Ex. 48) (setting forth an "Eight Week Rollout Schedule," from January 18-March 14, 2007).)  As part of this restructuring, WDM created the position of Center Store Manager ("CSM").  (*See* Doc. 67-5, Drew Elkins Dep., 56:23-58:4 (explaining that the position was created to ensure that the "largest department"—in terms of "percent of sales"—in the "store [had] a direct report").)  "The CSM is the third highest ranking employee in the store hierarchy, behind the Store Director and Co-Director," and other than those two positions, "the CSM is the only other salaried exempt position in the store."  (Doc. 66, p. 8.)  Moreover, when the Store Director and Co-Director are not in the store, "the CSM is the MOD [or manager-on-duty] with responsibility for the entire store and all store employees."  (*Id.*)

The CSM position in Store 543 was posted on WDM's internal job posting system from January 26 to January 28, 2007.  (*See id.*, p. 12 (citing Doc. 67-2, Larry Crane Dep. I, p.

---

[4]     WDM sets forth its "Statement of Undisputed Facts" on pages 2-19 of its brief in support of summary judgment (doc. 66).  The Court will use many of those facts that are uncontroverted by the Commission.  (*See* Doc. 71, pp. 12-17 (the Commission's "Response to Defendant's Statement of Undisputed Material Facts").)

167).)  Two candidates, but not Mr. Bradberry, applied for the CSM position.  (*See id.*)  One of those candidates accepted a CSM position at another store, and one withdrew from consideration, applying for—and receiving—another position.  (*See id.*)  The CSM position at Store 543 remained unfilled through May 2007, when Mr. Bradberry approached Store Director Larry Crane to express his interest in the vacancy.  (*See id.*, p. 13.)  Consistent with WDM's policy that posted positions that remain vacant for more than 30 days must be reposted internally (doc. 67-4, Sue Cline Dep, 177:19-178:4), Mr. Crane reposted the vacant CSM position, and Mr. Bradberry applied for the position on May 31, 2007.  (Doc. 66, p. 13; Doc. 67-1, Lou Bradberry Dep., at 21:17-18; Doc. 67-14, WDM Resps. to Interrogs., No. 6.)  Mr. Bradbery was the only candidate to apply for the position during the May 31 to June 2, 2007-posting period.  (Doc. 66, p. 13.)

Mr. Crane either offered the position to Mr. Bradberry (doc. 67-1, Lou Bradberry Dep., 286:8-16, 289:19-290:1) or, at a minimum, discussed the possibility of Mr. Bradberry training for the position while WDM looked for a candidate to replace Mr. Bradberry as Produce Manager.  (Doc. 67-2, Larry Crane Dep. I, 229:13-23, 230:23-231:21; Doc. 67-3, pp. 11-12, July 20, 2007 Notes of Larry Crane, Pl.'s Ex. A.)  Regardless, neither Mr. Crane nor anyone else at WDM interviewed Mr. Bradberry for the position prior to him purportedly receiving the CSM job offer.  (Doc., 67-1, Lou Bradberry Dep. 406:7-11; Doc. 67-2, Larry Crane Dep. I, 229:21-23.)  Moreover, Mr. Crane alone did not have the authority to hire Mr. Bradberry without Mr. Bradberry first being interviewed by a member of WDM's District-

level management.  (Doc. 67-3, pp. 11-12, July 20, 2007 Notes of Larry Crane, Pl.'s Ex. A; Doc. 67-12, Gary Law Decl., ¶¶ 3-7.)

On July 16, 2007, a former WDM employee (from 1999 through 2006, at Store 543), Jason Godwin, applied for the Store 543 CSM position.  (Doc. 67-7, Jason Godwin Dep., 62:8-11, pp. 44-47 (Pl.'s Ex. 28 (Employment Application Summary)).)  Later that month, both Mr. Bradberry and Mr. Godwin were interviewed for the position by Store 543 Co-Director Alvin Barnett and District Center Store Specialist Drew Elkins.  (Doc. 66, pp. 15-16.)  At the conclusion of the interviews, both` Mr. Barnett and Mr. Elkins believed Mr. Godwin to be the better qualified candidate (Doc. 67-6, Alvin Barnett Dep., 87:16-21; Doc. 67-5, Drew Elkins Dep., 163:7-166:15.), and the following day, Mr. Elkins reported their recommendation to Mr. Crane.  (Doc. 67-5, Drew Elkins Dep., 173:14-21.)  Mr. Crane hired Mr. Godwin for the CSM position (Doc. 67-2, Larry Crane Dep. I, 242:11-18; *see also* doc. 67-5, Drew Elkins Dep., 163:10-14 ("Winn Dixie did not select Jason Godwin.  Larry Crane selected Jason Godwin.")), and informed Mr. Bradberry of Mr. Godwin's selection.  (Doc. 67-2, Larry Crane Dep. I, 253:2-5.)

The Commission contends that WDM, after determining that Mr. Bradberry was qualified for the CSM position—and offering him that position—rescinded its offer, reopened the position, and gave it to a less-qualified and significantly younger applicant in violation of the ADEA.

<u>SUMMARY JUDGMENT STANDARD</u>

It is well-established that summary judgment is proper—consistent with Federal Rule of Civil Procedure 56(c)—"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And, it should go without saying, that "[t]he summary judgment rule is to be applied in employment discrimination cases as in any other case." *Archie v. Home-Towne Suites, LLC*, ___ F. Supp. 2d ____, 2010 WL 4439765, at *2 (M.D. Ala. Nov. 8, 2010) (citing *Chapman v. A1 Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc)). "No thumb is to be placed on either side of the scale." *Chappman*, 229 F.2d at 1026; *see also Hill v. Guyoungtech USA, Inc.*, Civil Action No. 07-0750-KD-M, 2008 WL 4073638, at *5 (S.D. Ala. Aug. 26, 2008) (same); *Leatherwood v. Mobile Hous. Bd.*, Civil Action No. 09-00410-CB-N, 2010 WL 3039598, at *2 (S.D. Ala. Aug. 4, 2010) (same).[5]

---

[5] The EEOC contends that "[i]n employment discrimination cases, summary judgment should be used sparingly because such claims often turn on the employer's intent," (doc. 71, p. 18), and further states that "[i]t is only with caution that a court should dispose of an employment discrimination case by summary judgment, given the heavily factual nature of the charge," (*id.* (citing *Beard v. Annis*, 730 F. 2d 741, 743 (11th Cir. 1984)), concluding that "in the present case, summary judgment is appropriate 'only when the plaintiff's evidence entirely fails to create any reasonable doubt concerning the employer's expressed lawful motive for taking [the] adverse employment action.'" (*Id.* (quoting *Beard*, 730 F.2d at 743).) Contrary to the EEOC's position, in *Chapman*, the Eleventh Circuit (citing statistical authority and clarifying its earlier opinions) added a "final note" regarding the law applicable to summary judgment in job discrimination cases, acknowledging—as the United States Supreme Court did in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)—"that questions of fact in job discrimination cases are both sensitive and difficult and there will seldom be eyewitness' testimony as to the employer's mental processes," but "none of this means that trial courts or reviewing courts should treat discrimination differently from other

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." [*Celotex*, 477 U.S.] at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

*Archie*, 2010 WL 4439765, at *1.

## THE ADEA AND SUMMARY JUDGMENT

As the district court in *Archie* recognized,

[t]here have been some recent developments in the area of law regarding discrimination on the basis of age. The ADEA provides, in part, that it shall be unlawful for an employer to refuse to hire any individual or otherwise discriminate against any individual with respect to compensation, terms,

---

ultimate questions of fact." *Chapman*, 229 F.3d at 1026 (quoting *Hicks*, 509 U.S. at 524) (internal quotation marks and some punctuation omitted).

conditions, or privileges of employment because of the individual's age. 29 U.S.C. § 623(a)(1). The United States Supreme Court has recently clarified that the text of the ADEA does not authorize a "mixed-motives" age-discrimination claim and that, "to establish a disparate-treatment claim under the plain language of the ADEA, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Serv., Inc.*, ___ U.S. ____, 129 S. Ct. 2343, 2349-50 n.2, 174 L. Ed. 2d 119 (2009). In other words, the causation standard outlined in *Gross* is a "but for" causation standard which requires a plaintiff to prove that a challenged employment decision would not have occurred but for the defendant's consideration of a protected category. *Gross*, 129 S. Ct. at 2350 (citing W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON LAW OF TORTS 265 (5th ed. 1984)).

*Id.* at *4.

Reiterating the Supreme Court's holding in *Gross*, the Eleventh Circuit recently stated that a plaintiff "alleging disparate treatment in violation of the ADEA must prove by a preponderance of the evidence (which may be direct or circumstantial[6]) that age was the 'but-for' cause of the challenged employer decision." *Diaz v. AIG Mktg., Inc.*, No. 10-10440, 2010 WL 3667019, at *2 (11th Cir. Sep. 22, 2010) (citation and quotation marks omitted). In

---

[6]     As the Seventh Circuit just reaffirmed in *Van Antwerp v. City of Peoria, Illinois*, ___ F.3d ____, 2010 WL 4923560 (7th Cir. Dec. 6, 2010),

Circumstantial evidence can take many forms, including suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group, evidence showing that similarly situated employees outside the protected class received systematically better treatment, and evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Id.* at *2 (citation and quotation marks omitted). But whatever circumstantial evidence is offered "***must*** 'point ***directly*** to a discriminatory reason for the employer's action.'" *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)) (emphasis added).

a case, "like this one involving circumstantial evidence, an ADEA plaintiff must prove, at a minimum, that he suffered an adverse employment action, in a job for which he was qualified, and that [a] similarly situated younger employee[ was] treated more favorably." *Id.* (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)).

While "[t]he Supreme Court did not answer in *Gross* whether the traditional *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973),] frame-work should still be applied in ADEA cases, [t]he Eleventh Circuit has continued to apply *McDonnell Douglas* analysis in ADEA cases." *Id.* at \*5 (citations omitted); *see, e.g., Licausi v. Symantec Corp.*, 378 Fed. App'x 964, 965 (11th Cir. 2010); *Armbrester v. Talladega City Bd. of Educ.*, 325 Fed. App'x 877, 879 n.4 (11th Cir. 2009); *see also Puckett v. McPhillips Shinbaum*, No. 2:06cv1148, 2010 WL 1729104 at \*7 & n.5 (M.D. Ala. Mar. 30, 2010). Therefore, this court, as the court in *Archie* did, "will apply the traditional *McDonnell Douglas* standard, with an eye toward determining whether a question of fact has been created as to whether age was a 'but for' cause . . . in the adverse employment actions challenged." *Archie*, 2010 WL 4439765, at \*5.

Accordingly, where a plaintiff does not present direct evidence of discrimination, he "must make a showing of circumstantial evidence that satisfies the test set forth in *McDonnell Douglas*," *King v. Ala. Dep't of Pub. Health*, Civil Action No. 09-0503-WS-C, 2010 WL 3522381, at \*7 (S.D. Ala. Sep. 2, 2010) (outlining similar procedure for racial discrimination and/or retaliation claims), which requires the plaintiff "to make out a prima

facie case." *Id.* To do so, a plaintiff must show he "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Chapman*, 229 F.3d at 1024 (citing *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997)); *Anderson v. Embarq/Sprint*, 379 Fed. App'x 924, 929 (11th Cir. 2010) (same); *cf. Turner v. City of Auburn*, 361 Fed. App'x 62, 64 (11th Cir. 2010) ("To establish a prima facie case of discrimination in a failure to promote case, the plaintiff's burden is satisfied by showing these things: (1) he is a member of a protected group; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; and (4) the person who received the promotion was not a member of the plaintiff's protected group and had lesser or equal qualifications." (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004)) (footnote omitted)).

If a plaintiff is able to establish a prima facie case, that "in effect creates a presumption that the employer unlawfully discriminated against the employee," *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)), which the employer must rebut by "articulat[ing] a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman*, 229 F.3d at 1024.

> However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

> If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.

*Id.* at 1024-25 (citations and quotation marks omitted); *see also Combs*, 106 F.3d at 1543 (plaintiff can avoid judgment as a matter of law only by "producing evidence sufficient to discredit in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions"); *Ash v. Tyson Foods, Inc.*, No. 08-16135, 2010 WL 3244920, at *7 (11th Cir. Aug. 17, 2010) (per curiam) (similar).

<u>DISCUSSION</u>

**I.     The Commission has established a prima facie case of age discrimination.**

Through the use of circumstantial evidence, the Commission has established a prima facie case of age discrimination, *see King*, 2010 WL 3522381, at *7, by showing that: (1) Mr. Bradberry was 50 years old when he applied for the CSM position on May 31, 2007, (*compare* doc. 67-1, Lou Bradberry Dep., at 21:17-18 *with* doc. 67-14, WDM Resps. to Interrogs., No. 6), making him a member of the protected age group, *see, e.g., Smith v. Potter*, 310 Fed. App'x 307, 310 (11th Cir. 2009) (under the ADEA, "protected group of persons [are] between the ages of forty and seventy"); (2) Mr. Bradberry was subjected to an adverse employment action, *see Parnell v. Stone,* 793 F. Supp. 742, 748 (E.D. Mich. 1992

(an employee is "subjected to an adverse employment action by virtue of her non-selection for [a management] position"); (3) Mr. Bradberry was qualified for the CSM position (*see* Doc. 67-2, Larry Crane Dep. I, 223:23-224:5 ("Did I think [Mr. Bradberry] had the minimum qualifications to fill that job?  Yes, I do.  [He] was a good associate, hard worker.  Do I feel like that with proper training [he] could do that job?  Yes, I did."); and (4) Mr. Godwin, who received the CSM position, is a "younger individual" (*see* doc. 67-14, Resp. to Interrog. No. 6, showing that Mr. Godwin was 24 when he applied for the CSM position).  *See Chapman*, 229 F.3d at 1024; *Anderson v. Embarq/Sprint*, 379 Fed. App'x at 929.

## II.    WDM has articulated a legitimate, nondiscriminatory reason why Mr. Godwin received the CSM position, over Mr. Bradberry.

Because the Commission has established a prima facie case of age discrimination, it is WDM's burden to articulate a legitimate, nondiscriminatory reason for its choice of Mr. Godwin over Mr. Bradberry.  *See Chapman*, 229 F.3d at 1024; *see also id.* (noting that "the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons"); *Ramsay v. Broward County Sheriff's Office*, No. 05-61959-CIV, 2008 WL 111304, at *7 (S.D. Fla. Jan. 8, 2008) (context of Title VII failure to promote claim) ("Once the plaintiff establishes a prima facie case by a preponderance of the evidence, the burden shifts to the employer to ***articulate (not prove)*** some legitimate, nondiscriminatory justification for rejection of the plaintiff's application." (emphasis added)).   WDM's articulated legitimate, nondiscriminatory reason is simple enough: Mr. Godwin was the best qualified person, in its opinion, for the CSM position.

Specifically, WDM contends that "Mr. Godwin's interview and prior work experience with WDM"—particularly his "two years experience as an Assistant Store Manager which involved front end and MOD responsibilities"—"demonstrated that he, not Mr. Bradberry, was the best qualified candidate for the CSM position." (Doc. 66, p. 21.) *Cf. Bothwell v. RMC Ewell, Inc.*, 278 Fed. App'x 948, 952 (11th Cir. 2008) (per curiam) (offering managerial position to purportedly more qualified candidate is a legitimate, non-discriminatory reason, precluding finding of retaliation under the ADEA).

## III. The Commission has not proffered sufficient evidence to establish that WDM's articulated legitimate, nondiscriminatory reason for hiring Mr. Godwin for the CSM position, rather than Mr. Bradberry, is pretextual.

Because WMD has articulated a legitimate, nondiscriminatory reason, "the presumption of discrimination [has been] eliminated" and the Commission must now "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reason[] given by [WDM] were not the real reason[] for the adverse employment decision." *Chapman*, 229 F.3d at 1024; *see Rowan v. Hayes Chrysler-Dodge-Jeep*, No. Civ.A.1:04CV1195-JEC, 2006 WL 825873, at *6 (N.D. Ga. Mar. 27, 2006) ("At this stage, in order to survive summary judgment, plaintiff must present evidence sufficient to permit a reasonable factfinder to conclude that the reason given by defendant was not the real reason for his termination, but merely a pretext for discrimination.").

While WDM argues that "[t]he EEOC has no affirmative evidence of pretext" (doc.

66, p. 24), the Commission may demonstrate that WDM's articulated reason was pretext "*either* by offering new affirmative evidence *or* attacking the credibility of the [WDM's] proffered reason." *Ramsay*, 2008 WL 111304, at *7 (citing *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988)) (emphasis added); *see Rowan*, 2006 WL 825873, at *6 ("Plaintiff may demonstrate pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" (quoting *Burdine*, 450 U.S. at 256)). "The proffered explanation is unworthy of belief if the plaintiff demonstrates 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder' could disbelieve it." *Scarborough v. Mineta*, No. 3:03CV328-RS-EMT, 2006 WL 931859, at *16 (N.D. Fla. Apr. 10, 2006) (quoting *Combs*, 106 F.3d at 1538). If the Commission fails to "proffer sufficient evidence to create a genuine issue of material fact regarding whether [WDM's] articulated reason[] is pretextual, [WDM] is entitled to summary judgment." *Chapman*, 229 F.3d at 1024-25.

The Commission's tasks at this third stage—put bluntly—is to attack WDM's proffered reason "head on and rebut it," *id.* at 1030, and create a genuine issue of material fact. The Commission attempts to do this by *first* directly attacking the credibility of WDM's articulated reason—Mr. Godwin was the best qualified candidate—by arguing that Mr. Bradberry, not Mr. Godwin, was the best qualified candidate, and *then* setting forth

evidence that may best be described as the Commission's attempt to establish "a discriminatory motive on the part of the employer through a longer chain of inferences." *Van Antwerp*, 2010 WL 4923560, at *2 (citing *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009)). This evidence is: (1) a WDM manager—who was either the decision maker or someone with influence over the decision maker—made ageist comments; (2) WDM failed to follow its standard hiring process; and (2) WDM has presented inconsistent reasons for selecting Mr. Godwin for the CSM position.

The Court will address these four arguments separately below, but the bottom line is this: the Commission has failed to set forth sufficient evidence to show that WDM lied—in an attempt to cover-up age discrimination—when it stated that Mr. Godwin was hired because he was the best qualified candidate.

### A. The Commission contends that Mr. Bradberry was more qualified than Mr. Godwin.

Where the gravamen of an employee's pretext argument is that they were more qualified than the candidate selected for a position, they must do more than simply show they were more qualified. *See Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000); *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001) (per curiam). In assessing the comparative qualifications of Mr. Bradberry and Mr. Godwin in order to determine if WDM's reason for selecting Mr. Godwin is pretextual, the Commission must show that the disparities in qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the

plaintiff for the job in question." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)

(quoting *Lee*, 226 F.3d at 1254), *overruled on other grounds by Ash v. Tyson Foods, Inc.*,

546 U.S. 454, 456-57 (2006).  Put another way, the task for this Court—on this first

contention—"***is not to judge which employee was more qualified***, but to determine whether

any disparity between [Mr. Godwin's] and [Mr. Bradberry's] managerial qualifications is so

great that a reasonable fact-finder could infer that [WDM] did not believe [Mr. Godwin] to

be better qualified." *Cofield*, 267 F.3d at 1268 (emphasis added); *see United States v. City of

New York*, 713 F. Supp. 2d 300, 319 (S.D.N.Y. 2010) ("Where a 'reasonable employer would

have found the plaintiff to be significantly better qualified for the job, but this employer did

not, the factfinder can legitimately infer that the employer consciously selected a less-

qualified candidate-something that employers do not usually do, unless some other strong

consideration, such as discrimination, enters into the picture.'" (quoting *Jackson v. Gonzales*,

496 F.3d 703, 707 (D.C. Cir. 2007)).

The Commission first states that "in contrast" to Mr. Bradberry's employment with

WDM, "Mr. Godwin's employment application states that he held one hourly position while

previously employed at Winn Dixie, Produce Associate." (Doc. 71, p. 23.)  Along that same

line, the Commission also contends that WDM cannot rely on Mr. Godwin's supervisory

experience as a basis for hiring him over Mr. Bradberry because WDM "has provided no

document[ary] evidence that Mr. Godwin ever in fact, held a management position," and,

"[i]n contrast, the record evidence shows that Mr. Bradberry had over 10 years of

management experience." (*Id.*, p. 26.) Based on the evidentiary record, these statements are simply wrong or at least misleading. First, the online application used by WDM and completed by Mr. Godwin asked for the "Ending/Current Job Title" for each employer listed, not a full employment history. (*See* Doc. 67-7, Jason Godwin Dep., p. 45 (Ex. 28).) Next, the record reveals that Mr. Godwin was both a Junior Assistant Manager and Assistant Store Manager. (*See id.*, 120:19-124:9; Doc. 67-2, Larry Crane Dep. I, 250:5-22; Doc. 67-14, Resp. to Interrog. No. 20.) Mr. Godwin stepped down from his management position at WDM, initially taking a part-time position as a Produce Associate, to pursue work as a computer technician (*see* doc. 67-2, Larry Crane Dep. I, 248:18-249:20), which explains why Produce Associate was listed as his "Ending/Current Job Title" with WDM.

The Commission next states that "in contrast" to Mr. Bradberry—who the Commission describes as "a dedicated and reliable manager"—"Mr. Godwin lacked dedication and reliability as he had once quit the company to pursue other employment," and "prior to quitting, . . . asked to be demoted from a full-time hourly position to a part-time associate position." (Doc. 71, pp. 23-24.) The Commission contends that this evidence could lead a reasonable juror to "conclude that Mr. Godwin was not reliable and Winn Dixie did not view him to be a superior candidate." (Doc. 71, p. 24.) As stated above, to show that Mr. Bradberry is more qualified than Mr. Godwin, the Commission must adduce evidence that the disparity in qualifications is "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Mr. Godwin] over [Mr.

Bradberry] for the [CSM position]." *Cooper*, 390 F.3d at 732. The Commission's **opinion** that Mr. Godwin's decision to pursue alternative employment in a field that he previously studied in college shows that he has lacks "dedication and reliability" to WDM is not that type of evidence. Moreover, as is further explained below, "[i]t is the perception of the decisionmaker"—not the Commission—"that is relevant." *Dungee v. Northeast Foods, Inc.*, 940 F. Supp. 682, 689 (D.N.J. 1996). Thus, the Commission has failed to adduce any evidence that WDM thought Mr. Godwin's decision to leave the company made him unreliable.

The Commission next attempts to knock holes in WDM's "assertion that Godwin was hired because he had front end[7] experience" (doc. 71, pp. 25-26), contending that (1) that reason is not consistent with the CSM job description, which "is silent with respect to the necessity for front end experience" (*id.*); (2) "Mr. Bradberry had more than ample front end experience including stints as grocery manager, five years as a bagger, several years of stock crew experience, and previously held [the] position of cashier" (*id.*, p. 26 n.88); and (3) WDM "failed to divulge the importance of this factor until after the decision to hire [Mr.] Godwin was made." (*Id.*, p. 26.)

WDM admits that "front end operations is not explicitly mentioned in the CSM job

---

[7]    According to WDM, and uncontroverted by the Commission, "[t]he 'front end' of a grocery store is highly important to store operations and success, because that is where most customer interaction occurs, visibility of store merchandise has its greatest impact, and overall store operations are controlled." (Doc. 66, p. 6 (citing Doc. 67-2, Larry Crane Dep. I, p. 257).)

description" (doc. 72, p. 10), but that job description does state that a CSM must "effectively lead, manage and develop overall store operations." (Doc. 72-4, p. 2.) According to the testimony of WDM management—including the decision maker, Larry Crane—the most qualified candidate for a CSM position will possess significant front-end experience. (*See* Doc. 67-2, Larry Crane Dep. I, 256:23-257:19 (recognizing that while both applicants were "good workers," Mr. Godwin "had more job skills"; specifically, "Jason did a lot of the job duties required of the center store manager and was already trained to do that. . . . [A]nd another consideration in this is that probably ***one of the hardest things for management associates are -- is the front-end operation***. That's where they seem to struggle the most, because there's so much information that you have to learn about all the operating systems. And fortunately for Jason, you know, he had an opportunity to do all of those job skills and be trained for that." (emphasis added)); Doc. 67-4, Sue Cline Dep., 96:3-10 (while WDM does not require that all CSMs have front-end experience, the company "prefer[s] that they do"); *id.*, 116:17-117:18 (noting that the "ideal" CSM candidate "would understand the intricacies of the total store and the front-ends -- ***because most issues arise in the front-end*** -- and seeing that that third -- that customer service manager was third in charge, or an MOD, where if the store director and co-director went home, they were in charge of the store. ***The ideal associate would have knowledge of the front-end to be able to manage the store and the issues that arise***." (emphasis added)).) As an assistant store manager, Mr. Godwin, in WDM's assessment, had more overall store—including front-end experience—than Mr.

Bradberry.  (*Compare, e.g.,* Doc. 67-5, Drew Elkins Dep., 88:17-89:9 ("You're looking for a center store manager, you're looking for someone that's -- the most qualified candidate would be one that's ran, I guess, the total store in regards to you're looking for, you know -- they were involved in close-up, office procedures, front end, had worked -- been successful in the department they were running. You know, and as an assistant manager, as I mentioned earlier, you're involved in more facets than just one department.  You know, sometimes you're running the store; sometimes you're the manager on duty; all responsibilities come to you.") *to* Doc. 67-1, Lou Bradberry Dep., 242:2-19 & 91:10-94:7 (for a two-month period in the past, Mr. Bradberry claims to have had manager-on-duty experience while serving as "grocery manager for a short period of time"); *id.*, 54:10-15 (Mr. Bradberry agreed that his training in front-end operations was limited to "being a cashier, a bagger, . . . grocery training, and pricing").)

The Commission next contends that Mr. Bradberry should have been selected for the CSM position because he has more "seniority" than Mr. Goodwin.  WDM correctly points out that "seniority is not synonymous with most qualified."  (Doc. 66, p. 25.)  *See, e.g., English v. CSA Equip. Co., LLC*, Civil Action No. 05-0312-WS-B, 2006 WL 2456030, at *16 (S.D. Ala. Aug. 22, 2006) ("plaintiff's argument that he was more qualified than Givens because he possessed more seniority than Givens ***in no way signifies pretext***" where the "unchallenged evidence is that the hiring decision in question was not based on straight seniority, and that seniority was not as significant as demonstrated job performance"; Court

further noted: "English may well disagree with CSA's relative weighting of seniority and performance in the hiring calculus, but **such disagreement, without more, cannot demonstrate pretext**." (internal citation and quotation marks omitted and emphasis added)) (citing *Cofield*, 267 F.3d at 1269).

WDM also correctly asserts that any belief by the Commission and/or Mr. Bradberry "that Mr. Bradberry was qualified for the CSM position because . . . he had sufficient managerial experience working in the dairy/frozen food department, produced department, general merchandise and grocery departments" (doc. 66, p. 26) is irrelevant. This is because Mr. Bradberry's subjective belief—whether asserted directly by Mr. Bradberry or by the Commission on his behalf—is irrelevant. *See, e.g., Little v. Foster Wheeler Constructors, Inc.*, No. 09-61003-CIV, 2010 WL 2035546, at *15 (S.D. Fla. May 24, 2010) ("Although Plaintiff may have believed that she was more qualified than Davis, her subjective beliefs are not relevant."); *Grindstaff v. Sun Chem. Corp.*, No. 1:09-cv-450, 2010 WL 4878953, at *8 (S.D. Ohio Nov. 22, 2010) ("Plaintiff's subjective beliefs regarding his own qualifications, and his speculation and self-serving opinions as to the lesser qualifications of others, are not evidence of age discrimination.") (citations omitted); *Dungee*, 940 F. Supp. at 689 ("The plaintiff's subjective belief that she was more qualified for the job does not create an issue of fact for the jury." (internal citations omitted)).

**B.      The Commission contends that Mr. Elkins—either the decision maker or someone with influence over the decision maker—is age-biased.**

The Commission contends that Center Store Specialist Drew Elkins—who even if not

the "'ultimate' decisionmaker" (doc. 71, p. 26), a reasonable jury could conclude influenced the hiring decision made by Larry Crane (*see id.*)—made statements that indicate he has an ageist preference for younger managers. (*See id.*, pp. 26-27.) In particular, "Elkin's [sic] testimony that he knew that Winn Dixie 'was looking for young, upcoming people' is highly suggestive circumstantial evidence from which a jury could infer discriminatory animus." (*Id.*) The Commission argues that this "remark coupled with the totality of the record evidence"—specifically, expert testimony that "Winn Dixie's District 36 CSM managerial labor force reflects a significant statistical shortfall for expected number of managers in the protected category based upon the relevant labor market pool" (*id.*, p. 27 n.89)—could lead a reasonable juror to find that the decision not to promote Bradberry was because of his age." (*Id.*, p. 27.)

Here the Commission appears to be playing "fast and loose" with the record. In their response in opposition to summary judgment, the Commission paints the picture that Mr. Crane retracted the CSM offer after—and based on—Mr. Elkin's remark "that he knew that Winn Dixie '[was] looking for young, upcoming people'" (*id.*, p. 27 (quoting doc. 67-5, Drew Elkins Dep., 30:15-16)), presumably for the CSM position at issue in this case. Mr. Elkins, however, made this comment during his deposition in this case while relating his employment history with the company prior to becoming the Store Director at Store 545 in 1995. (*Compare id. with* Doc. 67-5, 30:14-31:3 ("And there was a store in Americus, Georgia. And they were looking for young, upcoming people to go, so we went. Q. Is that

what Mr. Goss told you, that they were looking for folks to move to -- I'm sorry -- Americus, Georgia? A. No, I wouldn't say that. You know, I wanted to advance with the company. And in the Anniston area, there was not a whole lot of turnover, and I was looking for an opportunity. And that position was available.").)

Such a stray remark—especially one completely unrelated to Mr. Bradberry or the personnel action at issue in this case—"taken in the context of the entire record in this case," is "too attenuated and remote" to the circumstances at issue here to lend support to any reasonable inference that Mr. Bradberry was not hired for the CSM position because of his age. *Hammons v. Computer Programs and Sys., Inc. (CPSI)*, Civil No. 05-0613-WS-C, 2006 WL 3627117, at *13 (S.D. Ala. Dec. 12, 2006) (addressing disparaging remarks made about the plaintiff); *see also Ash v. Tyson Foods, Inc.*, 190 Fed. App'x 924, 926-27 (11th Cir. 2006) (explaining that stray remarks not uttered in context of challenged personnel actions are not sufficient circumstantial evidence to provide a reasonable basis for a finding of discrimination in the context of the employment decisions at issue); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291-92 (11th Cir. 1998) (indicating that stray remarks may provide circumstantial evidence to support a reasonable inference of discrimination, but must be viewed in conjunction with entire record in determining whether they might lead a reasonable jury to disbelieve proffered reason for challenged adverse employment action).

### C. The Commission contends that WDM failed to follow its standard hiring process.

The Commission contends that WDM failed to follow its normal hiring procedures

because it "chose an external candidate [Mr. Godwin] over an internal candidate," Mr. Bradberry, stating that "[b]ased on this irregularity alone, a reasonable jury could infer that Winn Dixie's real reason for rescinding Mr. Bradberry's job offer was because of age." (Doc. 71, p. 24.)  The Commission bases this belief on WDM's BABWD plan, which, according to the Commission, "was implemented to help internal candidates advance," and, according the testimony of "one of the drafters of the plan," "it was contemplated that all positions could be filled by [the] existing labor force."[8] (*Id.*)  The evidence shows, however, that the BABWD plan provided that both internal and external candidates could be considered and interviewed for vacant positions.  (*See* Doc. 72-2, Larry White Dep., Ex. 16 to Reply, 20:16-19 (discussing hiring under BABWD, "Q.  And did there come a time when you would consider external candidates for these new positions?  A.  Yes, ma'am."); *id.*, 61:18-62:3 (discussing hiring under BABWD, "Q.  And then where it states 'successful candidates will be selected from this pool,' what pool was Winn-Dixie referring to?  A. From the people that posted for the job . . . .  Q.  Was this pool limited to external or was this pool limited to only internal candidates or external and internal?  A.  Both.").)

The Commission next takes issue with WDM's failure to produce "the required interview guides and notes from its interviews of Godwin and Bradberry" (doc. 71, p. 24),

---

[8]        During his deposition, which the Commission has provided excerpts of (*see* doc. 71-6; *see also* doc. 72-2 (full deposition attached to WDM's reply)), Larry White described BABWD as "a project, not a policy," and stated that under BABWD, "if positions [remained] open," WDM "would entertain external applicants, as any other company would."  (*Id.*, 20:8-11.)  BABWD "was about restructuring the store management team inside the store."  (*Id.*, 21:8-10.)

which the Commission believes—"[a]ssuming the guides and notes were ever created"—*could* "disclose[ ] that Bradberry was the higher scoring candidate." (*Id.*) The Commission also argues that "the lack of documentation itself is enough to present a jury question." (Doc. 71, pp. 24-25.)

Testimonial evidence indicates that both Mr. Bradberry and Mr. Godwin were asked the same standard—"service related"—questions (*e.g.,* how they have dealt with disgruntled customers) in their interviews. (*See, e.g.,* Doc. 67-1, Lou Bradberry Dep., 317:1-10 & 322:23-323:5; Doc. 67-7, Jason Godwin Dep., 91:5-6; Doc. 67-5, Drew Elkins Dep., 157:12-15 & 157:19-158:2; *id.*, 166:16-21 (indicating that both Mr. Godwin and Mr. Bradberry were asked the same questions).) The "Salaried Manager Interview Guide," which states that it is to be used for "Co-Director and Center Store Mgr." candidates was produced by WDM (D00045-51) and was marked as plaintiff's exhibit 47 at Sue Cline's deposition. (*See* Doc. 67-4, pp. 55-61.) Ms. Cline indicated that the form was used during the BABWD rollout, which began in January 2007. (Doc. 67-4, Sue Cline Dep., 106:9-15.) It is not clear that this form was used at the interviews of Mr. Bradberry and Mr. Godwin, but testimonial evidence indicates that: (1) both Mr. Barnett and Mr. Elkins took notes during the interviews; (2) Mr. Barnett gave his notes to Mr. Elkins at the conclusion of the interviews; and (3) Mr. Elkins does not currently have his notes or know the location of the notes taken during the interview. (*See* Doc. 67-5, Drew Elkins Dep., 156:22-157:6; Doc. 67-6, Alvin Barnett Dep., 77:16-78:2; 80:9-20.) The fact that these notes—whether taken on the "Salaried Manager

Interview Guide" form or not—have not been produced is consistent with Ms. Cline's testimony that WDM does "not have a policy of retaining interview notes," but that the notes—including a completed version of "Salaried Manager Interview Guide" form (if used)—would "be held through the [interview] process." (Doc. 67-4, Sue Cline Dep., 108:14-109:4; 111:1-8.)

The Commission attempts to manufacture pretext by speculating about what the missing notes could disclose. (*See* Doc. 71, p. 24.) But they seem to see smoke where there is not fire. Speculation is never a basis upon which to oppose summary judgment, *see, e.g., Burrows v. Waffle House, Inc.*, No. 99-7053-CIV, 2000 WL 35593211, at *3 (S.D. Fla. Aug. 28, 2000) ("Once a party has made a showing that no material issues of fact are in dispute, ***mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion***." (quoting *Quarles v. GMC*, 758 F.2d 839, 840 (2d Cir. 1985)) (emphasis in original)), ***and*** "suspicions [] do not create a triable issue of fact." *Williams v. Harco Drugs, Inc.*, 896 F. Supp. 1150, 1154 (S.D. Ala. 1994); *see also Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1391 (11th Cir. 1983) ("A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory motive[.]") Here, Mr. Barnett and Mr. Elkins reached the consensus that Jason Godwin should be recommended for the CSM position at the conclusion of the interviews. (*See, e.g.,* Doc. 67-6, Alvin Barnett Dep., 87:16-21.) There is not a hint in the record that Mr. Bradberry performed better in his interview than Mr. Godwin.

The Commission relies on *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190 (5th Cir. 1992), for the proposition that "when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is not supporting documentation, a jury can infer pretext." (Doc. 71, pp. 24-25 (quoting *Lloyd*, 961 F.2d at 1195).) However, the absence of documentary proof—alone—does not establish pretext. *See Skelton v. Sara Lee Corp.*, 249 Fed. App'x 450, 462 (6th Cir. 2007) ("even if we assume that Defendant's evaluation process was haphazard—***at least as it pertained to note-taking during the interviewing process***—there exists no reasonable inference that Defendant discriminated on the basis of age" because there was no other evidence that this process, although "imperfect" was discriminatory based on age (emphasis added)); *cf. Keaton v. Cobb County*, 545 F.Supp.2d 1275, 1310 (N.D. Ga. 2008) ("The Court concludes that Plaintiff has not established pretext by implying that Defendants violated policy due to their failure to document properly the reasons for promoting Walker."); *see also Everett v. Lake Martin Area United Way*, 46 F. Supp. 2d 1233, 1237 (M.D. Ala. 1999) (relying on *Lloyd*) (summary judgment inapposite where defendant ***first*** "presented evidence that the plaintiff was terminated for reasons other than bankruptcy," and it was "undisputed that the plaintiff's bankruptcy was discussed among the decision makers prior to her termination"); *Morgan v. Houston's Restaurants, Inc.*, No. 99-6970-CIV, 2000 WL 1825403, at *4 (S.D. Fla. Oct. 23, 2000) (relying on *Everett* and *Lloyd*) (where the plaintiff was able to ***first*** show a "factual issue" regarding the purported use of "a ranking system of servers that dictated to which

- 27 -

stations servers were assigned"—the defendants argued that the plaintiff's lower rankings "meant that she received less desirable stations," but the plaintiff presented evidence from a former manager "that the ranking system was not used to chart serves"—the court held that defendants' inability to "produce the documentation to support the existence of the ranking system" (the alleged legitimate business reason) mandated an inference of pretext).

The Commission next states that the fact the Store Director, Mr. Crane, failed to conduct the interviews of Mr. Bradberry and Mr. Godwin violates WDM's hiring policy, and moreover, Mr. Crane's "shifting and changing reasons for his unavailability"—even though "he admits he was present at the store, on the day the interviews were conducted"—is evidence from which "[a] reasonable juror could infer a finding of pretext." (Doc. 71, p. 25.) The Commission misstates WDM's hiring policy, which requires two people—the Store Director (*or Co-Director in the Store Director's absence*) and someone from district-level management—interview candidates for salaried exempt positions, such as a CSM. (*See, e.g.,* Doc. 67-14, WDM Resps. to Interrogs., No. 10.) Mr. Elkins served as the district-level representative (doc. 67-5, Elkins Dep. 152:22-153:21), and Mr. Barnett, as the Store Co-Director, filled-in for Mr. Crane. (Doc. 67-1, Lou Bradberry Dep., 316:15-20.) Regardless, Mr. Bradberry and Mr. Godwin were interviewed by the same managers—Mr. Elkins and Mr. Barnett.

The Commission further attempts to discredit Mr. Crane (*see* doc. 71, pp. 27-28) by attacking testimony it attributes to him without citation—"Mr. Crane's [sic] testified that he

'did not find Mr. Bradberry's interview answers as impressive as those of Mr. Godwin's.'"[9]

(*id.*, p. 27)—on the basis that "Mr. Crane was not present to assess the candidates to determine for himself, the quality of the responses" (*id.*) is also unavailing. Mr. Crane (who is older than Mr. Bradberry[10]) testified that he made the decision to hire Mr. Godwin based on his "experience in [the] capacity as a manager of Lou Bradberry and Jason Godwin." (Doc. 67-2, Larry Crane Dep. I, 242:16-18; *see also id.*, 246:7-14 (explaining that he did not review Jason Godwin's application prior to the decision because he "was his supervisor ever since I was at the store and knew the positions that he worked in while at the store").) Mr. Crane also relied on Mr. Elkins and Mr. Barnett's assessment of the candidates' interview responses—not his own assessment of those responses. (*See id.*, 246:20-248:3 ("Based on their conversation and the interview that they had with Lou and Jason, they said that Lou has limited knowledge of store operations. . . . And the interview with Jason Godwin, his responses were broad.").)

Finally, even the fact that WDM offered Mr. Bradberry the CSM position and then

---

[9]     The Court has attempted, without success, to find this quote in either of Mr. Crane's depositions.

[10]     As Defendant points out in its memorandum in support of summary judgment (doc. 66, pp. 23-24), the fact that a decision maker, Mr. Crane here, is older than the plaintiff weighs against a finding that the decision was motivated by age. *See, e.g., Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) ("Elrod faces a difficult burden here, because all of the primary players behind his termination . . . were well over age forty and within the class of persons protected by the ADEA," making them "more likely to be the victims of age discrimination than its perpetrators."); *Moore v. Ala. Dep't of Corr.*, 137 Fed. App'x 235, 239 n.4 (11th Cir. 2005) ("Where decision-makers are also members of a protected class, the plaintiff faces a greater burden."); *Brown v. Northside Hosp.*, 311 Fed. App'x 217, 224 (11th Cir. 2009) (same).

rescinded its offer is not evidence of discrimination because the reason for doing so—a better

qualified candidate applied for the position—is non-discriminatory. *See, e.g., Solorio v. Am.*

*Airlines, Inc.*, No. 00-3780-CIV, 2002 WL 485284, at *7-8 (S.D. Fla. Feb. 28, 2002) (even if

inconsistent positions taken for rescission, the inconsistency does not rebut the

nondiscriminatory reason given for rescission of the offer: imposition on travel imposed by

plaintiff's own physician).

### D.     The Commission contends that WDM has presented inconsistent reasons for selecting Mr. Godwin.

The Commission attacks WDM for allegedly shifting its reason for not selecting Mr.

Bradberry.  (Doc. 71, pp, 28-29.)  Specifically, the Commission argues that WDM (1) listed

Mr. Godwin's computer experience—including the fact that he had a college degree in

computer science, which WDM now admits was not true—and (2) stated that Mr. Bradberry

was not familiar with its computer systems (although his deposition testimony reveals

otherwise) in its explanation for choosing Mr. Godwin during the administrative

investigation.  (*See id.*)  But WDM's Position Statement (doc. 71-4, Larry Crane Dep. I, Pl.

Ex. 2, pp. 14-16) also stated:

> During [Mr. Bradberry's] interview, it was noted that [Mr. Bradberry's] responses included only Produce Department experiences.  Further, . . . there was some concern over [Mr., Bradberry's] Front End Customer Service skills.  During Mr. Godwin's interview, Mr. Godwin showed experience and thoughts regarding all aspects of the store.  Further, Mr. Godwin . . . had previous experience in Winn-Dixie's front end operations.
>
> Furthermore, during [Mr. Bradberry's] employ with Winn-Dixie he has held the: Dairy/Frozen Food Manager, Meat Cutter, Stocker and Produce Manager

positions. Mr. Godwin had…been a Cashier, Office Associate, Grocery Associate, Jr. Assistant Manager, Produce Associate and Assistant Manager. Since the Center Store Manager is the third highest position in the store, and also requires Manager on Duty functions (responsibility for the entire store) Mr. Elkins and Mr. Barnett recommended Mr. Godwin for the position.

*Id.*, pp. 15-16.

This is entirely consistent with the arguments WDM has put forward in this litigation. Moreover, the Commission offers no evidence to show that WDM did not have an honest, good faith-belief regarding the incorrect computer skill-related information it offered the Commission during its administrative investigation. *Cf. Hammons*, 2006 WL 3627117, at *10 (Title VII and ADEA) (noting that "if an employer holds an honest, good-faith belief in the reason for an employee's dismissal, such a reason is not proven pretextual even if the employer's honest, good-faith belief is later proved incorrect or mistaken" (citing *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000) (affirming summary judgment for defendant where employee was fired for lying in investigation, and plaintiff offered no evidence that defendant lacked a good faith belief that employee had lied))).

CONCLUSION

While the Commission has established a prima facie case of age discrimination, it has not been able to show that WDM's legitimate nondiscriminatory reason for hiring Mr. Godwin for the CSM position is pretextual. Accordingly, WDM is entitled to judgment as a matter of law, and its motion (doc. 65; *see also* docs. 66 & 67) is due to be **GRANTED**. This action is **DISMISSED WITH PREJUDICE**, and judgment will be entered in favor of

Defendant and against Plaintiff on all claims.[11]

**DONE** and **ORDERED** this the 12th day of January, 2011.

s/ WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[11]     Presently before the Court are the parties' various pretrial-related filings: (1) Defendant's Motion to Exclude Proposed Expert Testimony of Robert M. LaJeunesse (doc. 73) and evidentiary submission in support thereof (doc. 74), both filed December 21, 2010; (2) Plaintiff's response to same and Motion to Exclude or Limit the Report and Opinion Testimony of Defendant's Expert Dr. Mary Baker (doc. 80) and evidentiary submission in support thereof (doc. 81), both filed December 30, 2010; and (3) the parties other pretrial submissions and objections (docs. 75-79, 84). Because this order resolves all substantive issues in this case, negating the need for trial, the Court **DEEMS** these pending motions **MOOT**.  Accordingly, the Final Pretrial Conference scheduled for January 20, 2011 is also **CANCELED**.  Also pending before the Court is Plaintiff's Motion for Determination of Reasonable Expert Fee Under Rule 26(b)(3) (doc. 83), filed December 30, 2010. The Court's January 5, 2011 Order sets forth a briefing schedule applicable to this motion.  Those dates will remain in effect, and the Court will resolve that motion notwithstanding this order on summary judgment, unless the parties advise otherwise in writing no later than **January 21, 2011**.